## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

|  |  |  |
|---|---|---|
| ISOKE N. JENKINS-DYER, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | Case No. 2:13-CV-02489-JAR |
| | ) | |
| ANITA L. DRAYTON, et al., | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## MEMORANDUM AND ORDER

Plaintiff Isoke N. Jenkins-Dyer brings this *pro se* action under the Employee Retirement Income Security Act of 1974 ("ERISA") for benefits due and breaches of fiduciary duties, and to recover damages for fraud and conversion under state law.  The case comes before the Court on Defendant Exxon Mobil Corporation's Motion to Dismiss the Second Amended Complaint (Doc. 53), Defendant Douglas E. Garrison's Motion to Dismiss the Second Amended Complaint (Doc. 58), and Defendant Anita L. Drayton's Motion to Dismiss (Doc. 55). The motions are fully briefed, and the Court is prepared to rule.  As explained more fully below, the Court grants Defendant Drayton's motion to dismiss for lack of personal jurisdiction and denies Defendant Exxon's and Defendant Garrison's motions to dismiss for failure to state a claim.  However, the Court allows the parties additional time to brief the issue of transfer.

### I.     Factual Background

Because Plaintiff is a *pro se* litigant, the Court must construe her pleadings liberally and

apply a less stringent standard than that which is applicable to attorneys.[1]  If a *pro se* plaintiff's complaint can reasonably be read "to state a valid claim on which the plaintiff could prevail, [the court] should do so despite the plaintiff's "failure to cite proper legal authority, h[er] confusion of various legal theories, h[er] poor syntax and sentence construction, or h[er] unfamiliarity with pleading requirements."[2]  It is not proper, however, for "the district court to assume the role of advocate for the *pro se* litigant."[3]  For that reason, the court should not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues,"[4] nor should it "supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf."[5]  The court need only accept as true the plaintiff's "well-pleaded factual contentions, not h[er] conclusory allegations."[6]

Drawing all reasonable inferences in favor of Plaintiff, the Court takes the following facts from Plaintiff's Second Amended Complaint and an undisputedly authentic copy of the ExxonMobil Savings Plan,[7] which Defendant Exxon has attached to its motion to dismiss. Plaintiff is the natural-born daughter of the late Connington L. Wood ("Wood"), a former Exxon

---

[1] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[2] *Id.*

[3] *Id.*

[4] *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991).

[5] *Whitney v. New Mexico*, 113 F.3d 1170, 1173 (10th Cir. 1997).

[6] *Hall*, 935 F.2d at 1110.

[7] Doc. 54-1.  The Court may consider the contents of the ExxonMobil Savings Plan without converting Defendants' motions into motions for summary judgment because (1) Plaintiff referred to the ExxonMobil Savings Plan in her complaint, (2) the document is central to Plaintiff's claim, and (3) the parties do not dispute the document's authenticity.  *See Jacobsen v. Desert Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002) (citing *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997)).

employee based in Houston, Texas.  At the time of his death, Wood owned an ExxonMobil Savings Plan (the "Savings Plan") account worth about $94,000.  Defendant Garrison was Exxon's plan administrator, and the Savings Plan was subject to ERISA regulation.  The Savings Plan's terms provided that, in the event of a plan participant's death, the participant's account would transfer to any named beneficiary.  If the participant died without naming a beneficiary, the account would transfer pursuant to the standard beneficiary provision: first to the participant's spouse, then to his children.  Any prior beneficiary designation would be canceled if the participant subsequently married.  Neither Plaintiff nor Defendant Drayton were named beneficiaries on Wood's Savings Plan account.  Plaintiff alleges, however, that Wood had named his ex-wife, Leontyne Holloway, as a beneficiary and that Ms. Holloway had waived her interest in the account in favor of Plaintiff.

Wood died of lung cancer in May 2007.  One week after Wood's death, Defendant Drayton recorded a marriage certificate in Harris County, Texas, purporting to certify that Drayton and Wood were married in a ceremony performed March 29, 2007.  On the day she recorded the marriage certificate,  Drayton called Plaintiff's mother in Kansas seeking financial information that would help her obtain Wood's employee benefits.  Drayton told Plaintiff's mother that she had married Wood in September 2006.  Plaintiff's follow-up inquiry with the Harris County Clerk's Office revealed that Drayton had applied for marriage licenses in that county on December 5, 2006, and March 2, 2007.

Plaintiff filed a claim for ownership of Wood's Savings Plan account on May 15, 2007, informing Defendants Exxon and Garrison of her suspicion that Wood and Defendant Drayton were not married when Wood passed away.  Drayton filed her claim for the account in either

May or June 2007.  Without notifying Plaintiff, Exxon and Garrison denied Plaintiff's claim and transferred the account to Drayton in July 2007.  Despite Plaintiff's repeated inquiries and a Savings Plan provision requiring a response to each claim within ninety days, Exxon and Garrison failed to notify Plaintiff of her claim's disposition until February 21, 2008.  Plaintiff appealed the denial of her claim.  She further alleges that Exxon and Garrison concealed from her the details of Wood's Savings Plan account and failed adequately to investigate Drayton's claim for ownership of the account.

In September 2008, Defendant Exxon brought an interpleader action in the Southern District of Texas, stating it could not "safely determine the proper beneficiary" of Wood's employee pension and disability plans.  Exxon named both Plaintiff and Defendant Drayton as defendants.  That interpleader suit mirrored an earlier one filed in the District of Kansas by Life Insurance Company of North America to determine the proper beneficiary of Wood's employee life insurance policy.  Drayton did not defend either action, and both cases were ultimately resolved in favor of Plaintiff.  Plaintiff claims the issues in the interpleader suits are identical to those before the Court in this action.

## II.     Lack of Personal Jurisdiction—Drayton

Plaintiff, a Kansas resident, invokes this Court's diversity jurisdiction under 28 U.S.C. § 1332, alleging that Defendant Drayton has been at all times material to this case a resident of Washington, D.C., and that the amount in controversy is at least $94,000.  Defendant Drayton moves to dismiss for lack of personal jurisdiction.

Plaintiff has the burden of establishing personal jurisdiction over Defendant Drayton.[8]  In

---

[8]*Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011).

the absence of an evidentiary hearing, as in this case, the plaintiff must make only a prima facie showing of jurisdiction to defeat a motion to dismiss.[9]  "The plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant."[10]  Allegations in a complaint are accepted as true if they are plausible, non-conclusory, and non-speculative, to the extent that they are not controverted by submitted affidavits.[11]  At the same time, the Court does not have to accept as true conclusory allegations, nor incompetent evidence.  When a defendant has produced evidence to support a challenge to personal jurisdiction, a plaintiff has a duty to come forward with competent proof in support of the jurisdictional allegations of the complaint.[12]  The court resolves all factual disputes in favor of the plaintiff.[13]  Conflicting affidavits are also resolved in the plaintiff's favor, and "the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party."[14]  "In order to defeat a plaintiff's prima facie showing of jurisdiction, a defendant must present a compelling case demonstrating 'that the presence of some other considerations would render jurisdiction unreasonable.'"[15]

---

[9]*AST Sports Sci., Inc. v. CLF Distrib. Ltd.,* 514 F.3d 1054, 1056–57 (10th Cir. 2008); *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995).

[10]*Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1159 (10th Cir. 2010) (citing *TH Agric. & Nutrition, LLC v. Ace European Grp. Ltd.,* 488 F.3d 1282, 1286 (10th Cir. 2007)); *OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998).

[11]*Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)); *Pytlik v. Prof'l Res., Ltd.*, 887 F.2d 1371, 1376 (10th Cir. 1989); *Behagen v. Amateur Basketball Ass'n of U.S.A.*, 744 F.2d 731, 733 (10th Cir. 1984), *cert. denied*, 471 U.S. 1010 (1985).

[12]*Pytlik*, 887 F.2d at 1376.

[13]*Dudnikov*, 514 F.3d at 1070.

[14]*Behagen*, 744 F.2d at 733.

[15]*OMI Holdings*, 149 F.3d at 1091 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

"To obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment."[16] Kansas' long arm statute is coextensive with the constitutional limitations imposed by the due process clause.  Thus, if jurisdiction is consistent with due process, Kansas' long arm statute authorizes jurisdiction over a nonresident defendant.[17]

"The Due Process Clause secures an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'"[18]  A court may therefore exercise personal jurisdiction over a nonresident defendant only if the defendant has "minimum contacts" with the forum state.[19]  The "minimum contacts" requirement may be met in two ways:

> First, a court may, consistent with due process, assert *specific* jurisdiction over a nonresident defendant "if the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities."  *Burger King*, 471 U.S. at 472, 105 S. Ct. 2174 (internal quotations omitted).  Where a court's exercise of jurisdiction does not directly arise from a defendant's forum-related activities, the court may nonetheless maintain *general* personal jurisdiction over the defendant based on the defendant's general . . . contacts with the forum state.[20]

---

[16]*Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1295 (10th Cir. 1999) (internal quotation marks omitted).

[17]*Fed. Rural Elec. Ins. Corp. v. Kootenai Elec. Corp.*, 17 F.3d 1302, 1305 (10th Cir. 1994) (citing *Volt Delta Res., Inc., v. Devine*, 740 P.2d 1089, 1092 (Kan. 1987)).

[18]*OMI Holdings, Inc., v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1090 (10th Cir. 1998) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985)).

[19]*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980).

[20]*OMI Holdings*, 149 F.3d at 1090-91.

Because Plaintiff does not contend the Court has general jurisdiction over Defendant Drayton,[21] the Court will consider only whether it may exercise specific jurisdiction.  In the specific-jurisdiction arena, the "minimum contacts" standard requires (1) that the nonresident defendant purposefully directed her activities at residents of the forum state, and (2) that the plaintiff's injuries "arise out of or relate" to the defendant's forum-related activities.[22]  Additionally, the Court's exercise of personal jurisdiction "must always be consonant with traditional notions of fair play and substantial justice."[23]

      *A.   Minimum Contacts*

To establish purposeful direction in tort-based lawsuits like this one, the plaintiff must show that the defendant (a) intentionally acted (b) in a manner expressly aimed at Kansas with (c) knowledge that the brunt of the injury would be felt in the forum state.[24]  This doctrine "ensure[s] that an out-of-state defendant is not bound to appear to account for merely random, fortuitous, or attenuated contacts with the forum state."[25]  The court should evaluate both the quantity and quality of the defendant's contacts with the forum state.[26]  Further, a plaintiff in the Tenth Circuit must present "something more" than the injuries the plaintiff allegedly suffered in order to show that the defendant "expressly aimed" her conduct at the forum state.[27]  It is not

---

[21]Doc. 62 at 23.

[22]*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984).

[23]*Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1071 (10th Cir. 2008).

[24]*Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).

[25]*Id.*

[26]*Pro Axess, Inc., v. Orlux Distrib., Inc.*, 428 F.3d 1270, 1278 n.5 (10th Cir. 2005); *OMI Holdings*, 149 F.3d at 1092.

[27]*Dudnikov*, 514 F.3d at 1077.

7

enough, in other words, for the plaintiff to rely on the mere foreseeability that the defendant's alleged conduct would cause harm to the plaintiff in the forum state. Rather, "*the forum state itself must be the focal point of the tort.*"[28] Even a tort intentionally committed against a known forum resident is insufficient, standing alone, to satisfy the "expressly aimed" requirement.[29]

Defendant Drayton declares by affidavit, and Plaintiff does not dispute, that Drayton has never resided, owned property, or transacted business in Kansas. Her only visit to this state was for a church event that occurred over twenty years ago.[30] Nevertheless, Plaintiff contends Drayton has purposefully directed activities at Kansas because Drayton: (1) was a named defendant in a prior lawsuit in this Court; (2) initiated a claim for Wood's employment benefits that harmed Plaintiff, a Kansas resident; and (3) telephoned Plaintiff's mother seeking information that would help Drayton obtain Wood's employment benefits. Drayton responds that none of these acts provides a sufficient basis for the Court to exercise specific personal jurisdiction over her. The Court will address each act in turn.

1.    Prior Lawsuit

Plaintiff first claims that "[s]ince Defendant Drayton has been a party [to a lawsuit] in the District of Kansas, she has minimal contacts with the forum state such 'that she should

---

[28]*Shrader v. Biddinger*, 633 F.3d 1235, 1244 (10th Cir. 2011) (emphasis in original) (quoting *Dudnikov*, 514 F.3d at 1074 n.9).

[29]*See Walden v. Fiore*, 134 S. Ct. 1115, 1125 (2014) ("Petitioner's actions in Georgia did not create sufficient contacts with Nevada simply because he allegedly directed his conduct at plaintiffs whom he knew had Nevada connections. Such reasoning improperly attributes a plaintiff's forum connections to the defendant and makes those connections 'decisive' in the jurisdictional analysis. It also obscures the reality that none of petitioner's challenged conduct had anything to do with Nevada itself.") (internal citations omitted).

[30]Doc. 56-1 ¶¶ 3-5.

reasonably anticipate being haled into court there.' "[31] Plaintiff refers the Court to *Life Insurance Co. of North America v. Jenkins-Dyer*,[32] an interpleader action to determine the rightful beneficiary of Wood's life insurance policy.  The court in that case entered default judgment against Drayton for failing to defend.[33]  Drayton asserts that her involvement in that lawsuit resulted solely from the unilateral acts of third parties and does not constitute purposeful direction on her part.

The Court finds that Defendant Drayton did not purposefully direct any activity toward Kansas by being named as a defendant in the interpleader suit.  The unilateral activity of third parties cannot satisfy the minimum contacts requirement.[34]  Rather, the plaintiff must show that the *defendant* directed some activity toward residents of the forum state.[35]  Here, Drayton took no action at all by defaulting in the interpleader suit: "she chose not to appear, challenge jurisdiction, or defend her claimed interests."[36]  Her only affiliation with the case stemmed from a third party's decision to name her as an interpleader defendant.  Thus, the Court may not rely on Drayton's involvement in the interpleader suit to exercise personal jurisdiction over her.

2.      Tortious Acts

Plaintiff next argues the Court has jurisdiction over Defendant Drayton because she

---

[31]Doc. 62 at 19 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

[32]No. 08-CV-2129 KHV, 2009 WL 297481 (D. Kan. Feb. 6, 2009).

[33]Doc. 62 at 18.

[34]*Hanson v. Denckla*, 357 U.S. 235, 253 (1958); *OMI Holdings, Inc., v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1092 (10th Cir. 1998)  (citing *World-Wide Wolkswagen*, 444 U.S. at 295).

[35]*Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1071 (10th Cir. 2008) (quoting  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).

[36]Doc. 62 at 18.

"claim[ed] benefits which rightfully belong to Plaintiff[,] result[ing] in the injury alleged in this lawsuit."[37]  Plaintiff contends, in effect, that Drayton's tortious activity directed at a Kansas resident provides a sufficient basis for jurisdiction.  As explained above, however, a defendant does not "expressly ai[m]" her conduct at a forum simply by committing an intentional tort against a forum resident.[38]  Exercise of jurisdiction in such a case would be based on the mere fortuity that the plaintiff resides in the forum state.[39]  The Tenth Circuit requires "something more": "the forum state itself must be the focal point of the tort."[40]  The Court therefore turns to the remaining contacts Drayton made with Kansas in furtherance of the alleged fraud.

3.    Phone Call to Plaintiff's Mother

Plaintiff believes that Defendant Drayton's telephone call to Plaintiff's mother in Kansas suffices to meet the minimum contacts requirement.  The phone call, Plaintiff explains, was a purposeful act by which Drayton hoped to obtain information to support her fraudulent claim for Wood's Savings Plan account.  Drayton declares in her affidavit that she did not know where Plaintiff's mother was located when Drayton called.  In any case, Drayton continues, a single phone call is not enough to confer jurisdiction on this Court.

In determining whether a forum state is the focal point of an alleged tort, the court should evaluate both the quantity and quality of the defendant's tort-related contacts with the state.[41]

---

[37]*Id.*

[38]*See Walden v. Fiore*, 134 S. Ct. 1115, 1125 (2014); *Shrader v. Biddinger*, 633 F.3d 1235, 1244-45 (10th Cir. 2011).

[39]*See Dudnikov*, 514 F.3d at 1071.

[40]*Id.* at 1074 n.9, 1077.

[41]*See Pro Axess, Inc., v. Orlux Distrib., Inc.*, 428 F.3d 1270, 1278 n.5 (10th Cir. 2005); *OMI Holdings, Inc., v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1092 (10th Cir. 1998).

The contact in this case takes the form of a telephone call.  The Tenth Circuit has stated that phone calls "are not necessarily sufficient in themselves to establish minimum contacts"[42] but has not articulated a bright-line rule specifying a number of calls that will create sufficient contacts.[43]  In *Soma Medical International v. Standard Chartered Bank*,[44] the court cited with approval a District of Utah decision finding that "hundreds" of phone calls and letters constituted "some evidence suggesting purposeful availment."[45]  A "limited number of faxes and other written communications," by contrast, failed to establish personal jurisdiction.[46]  The court in *Far West Capital, Inc. v. Towne*[47] also refused to find jurisdiction, noting that the ten-to-twenty faxes and letters at issue were "far fewer" than the number of communications that had created minimum contacts in other circuits.[48]  And in *Loeffelbein v. Rare Medium Group*,[49] the District of Kansas deemed twenty phone calls an insufficient number of communications to meet the minimum contacts requirement.[50]

Here, Defendant Drayton's connection with Kansas is too attenuated to confer personal jurisdiction on the Court.  Plaintiff alleges only one communication; that is a fraction of the

---

[42]*Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1077 (10th Cir. 1995).

[43]*Loeffelbein v. Rare Medium Group*, No. Civ.A.02-2435-CM, 2003 WL 23484636, at *4 (D. Kan. Oct. 21, 2003).

[44]196 F.3d 1292 (10th Cir. 1999).

[45]*Id*. at 1299; *Harnishfeger Eng'rs, Inc. v. Uniflo Conveyor, Inc.*, 883 F. Supp. 608, 615 (D. Utah 1995) (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 473 (1985)) (internal quotation marks omitted).

[46]*Soma Med.*, 196 F.3d at 1299.

[47]46 F.3d 1071 (10th Cir. 1995).

[48]*Id.* at 1077.

[49]No. Civ.A.02-2435-CM, 2003 WL 23484636 (D. Kan. Oct. 21, 2003).

[50]*Id.* at *4.

quantities described even in this circuit's cases where jurisdiction was found lacking.  The quality of the telephone call as a meaningful state-specific communication, moreover, is relatively poor.  Unlike those who send written letters or hold in-person meetings, telephone callers are frequently unaware of the states in which their intended recipients reside.  Because it is undisputed in this case that Drayton did not know Plaintiff's mother would answer the phone from Kansas, the Court cannot conclude that the call was "expressly aimed" at this state.  Finally, though Drayton allegedly made the phone call to Kansas to aid her commission of fraud, the more numerous and more direct actions Drayton took in furtherance of the tort occurred outside of Kansas: she recorded the marriage license in Texas, submitted documents and information to an Exxon office in Texas, and claimed from her home in Washington, D.C., the Savings Plan account of an employee stationed in Texas.  Drayton's single phone call to a Kansas resident is therefore insufficient to establish this state as the focal point of the alleged fraud.  The Court finds that Defendant Drayton did not purposefully direct her activities at Kansas residents.

B.      *Traditional Notions of Fair Play and Substantial Justice*

Though Defendant Drayton's absence of minimum contacts with Kansas is a sufficient basis for dismissal, the Court considers further whether the exercise of personal jurisdiction over Drayton would comport with "traditional notions of fair play and substantial justice."[51]  The Court may not exercise personal jurisdiction over Drayton if doing so would be unreasonable under the circumstances of the case.

> In assessing whether an exercise of jurisdiction is reasonable, we consider [a] the burden on the defendant, [b] the forum state's interest in resolving the dispute, [c] the plaintiff's interest in receiving

---

[51]*OMI Holdings, Inc., v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998).

> convenient and effective relief, [d] the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and [e] the shared interest of the several states in furthering fundamental social policies.[52]

The analysis of minimum contacts and reasonableness are complementary: "the weaker the plaintiff's showing on [minimum contacts], the less a defendant need show in terms of unreasonableness to defeat jurisdiction. The reverse is equally true: an especially strong showing of reasonableness may serve to fortify a borderline showing of [minimum contacts]."[53] Given the weakness of Drayton's contact with Kansas—a single phone call—her burden to show unreasonableness is slight.

The balance of factors weighs in favor of Defendant Drayton. Drayton is not a sophisticated corporate defendant, but an individual residing over one thousand miles from Kansas. Forcing her to litigate in this state on the basis of one phone call would be unreasonable. The state of Kansas, moreover, has little interest in the subject matter of this dispute: Plaintiff's claims will turn primarily on Texas family law and on the existence and validity of the ostensible Texas-based marriage at issue. Most of the evidence and witnesses able to testify concerning the wrongs alleged are located outside of Kansas. And determination of the issues raised will affect the substantive social policies of Texas, not Kansas. The Court therefore concludes that exercising jurisdiction would offend traditional notions of fair play and substantial justice.[54]

## III.    Improper Venue and Issue of Transfer—Drayton

---

[52]*Id.* at 1095.

[53]*Id.* at 1092.

[54]*See Vestring v. Halla*, 920 F. Supp. 2d 1189, 1197 (D. Kan. 2013) (finding that exercising personal jurisdiction would offend traditional notions of fair play and substantial justice where contacts were weak and Kansas had only a small interest in the case).

Defendant Drayton also argues that venue is improper in this Court.  In the District of Kansas, the standards for deciding a motion to dismiss under Rule 12(b)(3) for improper venue are generally the same as those for deciding a motion to dismiss under Rule 12(b)(2) for lack of personal jurisdiction.[55]  Drayton points out, and the Court agrees, that ERISA's expansive venue provision does not apply to the action against her because Plaintiff's fraud and conversion claims do not arise under ERISA.[56]  28 U.S.C. § 1391(b) therefore governs venue and provides that a civil action may be brought in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situation; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.[57]

Section 1391(b)(1) does not apply because Drayton is not a resident of Kansas.  Further, in accordance with the Court's finding that Drayton's Kansas-related activities fail to meet the minimum contacts requirement for personal jurisdiction, the Court concludes that no "substantial part of the events or omissions giving rise to [Plaintiff's] claim occurred" in Kansas.[58]

Defendant Drayton contends that this case could have been brought in other districts, including the District of Columbia.[59]  When venue is improper, the Court may, in the interests of

---

[55]*Mohr v. Margolis, Ainsworth & Kinlaw Consulting, Inc.*, 434 F. Supp. 2dd 1051, 1057-58 (D. Kan. 2006).

[56]*See* 29 U.S.C. § 1132(e)(2) ("Where an action under [ERISA] is brought in a district court of the United States, it may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found.").

[57]28 U.S.C. § 1391(b).

[58]*See id.*

[59]Doc. 56 at 10.

justice, transfer the case to a district court in which it could have been brought pursuant to 28

U.S.C. § 1406(a).  Similarly, 28 U.S.C. § 1631 provides that when "a court finds that there is a

want of jurisdiction, the court *shall*, if it is in the interest of justice, transfer such action . . . to

any other such court in which the action . . . could have been brought at the time it was filed."[60]

The Court may raise the issue of transfer on its own accord.[61]

   The parties have not moved for transfer, nor have they addressed whether the interests of

justice warrant transfer.  The "interests of justice" proviso is not a "talismanic incantation."[62]

However, "[n]ormally transfer [under § 1631] will be in the interest of justice because . . .

dismissal of an action that could be brought elsewhere is time-consuming and justice-

defeating."[63]  If upon refiling in the new venue the action now would be barred by the statute of

limitations, then it is in the interest of justice and "particularly appropriate" to transfer.[64]

   Although the Court finds that Defendant Drayton's Motion to Dismiss should be granted

for lack of personal jurisdiction, the Court will delay dismissal of this action to allow the parties

to address whether transfer of the case to either the Southern District of Texas or the District of

Columbia would be in the interests of justice.  When considering the consequences of a transfer,

---

[60]28 U.S.C. § 1631 (emphasis added).

[61]*See Trujillo v. Williams*, 465 F.3d 1210, 1222 (10th Cir. 2006).

[62]*Ross v. Colo. Outward Bound Sch.*, 822 F.2d 1524, 1526 n.1 (10th Cir. 1987).

[63]*Miller v. Hambrick*, 905 F.2d 259, 262 (9th Cir. 1990) (quoting *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 467 (1962) (transferring under the venue statute 28 U.SC. § 1406)) (internal quotation marks omitted); *see also Pfister v. Selling Source, LLC*, 931 F. Supp. 2d 1109, 1119 (D. Nev. 2013) ("The interest of justice is also served in transferring this case rather than dismissing it.  Dismissing this action and requiring plaintiff to file a new action in Florida would waste both the parties' and the court's resources. . . . Transfer here would lead to a more just, speedy, and inexpensive resolution for all parties.").

[64]*Sinclair v. Kleindienst*, 711 F.2d 291, 294 (D.C. Cir. 1983) (citing *Burnett v. N.Y. Cent. R.R. Co.*, 380 U.S. 424, 430 (1965) (stating that § 1406(a) prevents "the unfairness of barring a plaintiff's action solely because a prior timely action is dismissed for improper venue after the applicable statute of limitations has run.")); *see also McDonald v. Doolittle*, 885 F. Supp. 233, 235 (D. Kan. 1995).

the Court is authorized to take " 'a peek at the merits' to avoid raising false hopes and wasting judicial resources that would result from transferring a case which is clearly doomed."[65]  Because Drayton has moved to dismiss under Fed. R. Civ. P. 12(b)(6) and has adopted Defendant Exxon's legal arguments in favor of dismissal, the Court will address the merits of the action in the next section.

## IV.   Failure to State a Claim—Exxon and Garrison

### A.   *Legal Standard*

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must present factual allegations, assumed to be true, that "raise a right to relief above the speculative level" and must contain "enough facts to state a claim to relief that is plausible on its face."[66]  Under this standard, "the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."[67]  The plausibility standard does not require a showing of probability that "a defendant has acted unlawfully,"[68] but requires more than "a sheer possibility."[69]

The plausibility standard enunciated in *Bell Atlantic v. Twombly* seeks a middle ground between heightened fact pleading and "allowing complaints that are no more than 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,' which the Court stated 'will not do.' "[70]  *Twombly* does not change other principles, such as that a court must

---

[65]*Hough v. Booker*, 210 F.3d 1147, 1150 (10th Cir. 2000) (citation and quotation omitted).

[66]*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

[67]*Ridge at Red Hawk LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original).

[68]*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[69]*Id.*

[70]*Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 555).

accept all factual allegations as true and may not dismiss on the ground that it appears unlikely the allegations can be proven.[71]

The Supreme Court has explained the analysis as a two-step process. For purposes of a motion to dismiss, the Court "must take all the factual allegations in the complaint as true, [but is] not bound to accept as true a legal conclusion couched as a factual allegation.' "[72] Thus, the Court must first determine if the allegations are factual and entitled to an assumption of truth, or merely legal conclusions that are not entitled to an assumption of truth.[73] Second, the Court must determine whether the factual allegations, when assumed true, "plausibly give rise to an entitlement to relief."[74] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[75]

### B.  Plaintiff's ERISA Claims

Plaintiff alleges that Defendants Exxon and Garrison transferred Wood's Savings Plan account to Defendant Drayton after Drayton falsely claimed to be Wood's surviving spouse. Plaintiff insists that Wood died unmarried and that Plaintiff, not Drayton, is entitled to the account. She therefore brings this ERISA action "to recover benefits due to h[er] under the terms of the plan."[76] Plaintiff also claims damages under ERISA for breaches of fiduciary duties, alleging Exxon and Garrison failed adequately to investigate Drayton's claim for the Savings

---

[71]*Id.* (citing *Twombly*, 550 U.S. at 556).

[72]*Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

[73]*Id.* at 679.

[74]*Id.*

[75]*Id.* at 678.

[76]29 U.S.C. § 1132(a)(1)(B).

17

Plan account and refused to respond to Plaintiff's repeated requests for information about the account.[77]

Because ERISA allows civil actions to be brought only by plan "participant[s] or beneficiar[ies]," however, Plaintiff may not obtain relief under ERISA unless she is a "beneficiary" of Wood's Savings Plan account.[78]  If she cannot plausibly show she is a "beneficiary," the Court must dismiss her action under Fed. R. Civ. P. 12(b)(6) because she lacks statutory standing to pursue her ERISA claims.[79]  In the Tenth Circuit, a plaintiff need only state a "colorable claim" for benefits due in order to acquire standing to sue as an ERISA "beneficiary."[80]

ERISA defines a "beneficiary" as "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder."[81] Plaintiff's entitlement to relief thus turns on Wood's beneficiary designations and on the terms of Defendant Exxon's Savings Plan.  Plaintiff contends she is a beneficiary of Wood's account because Wood's named beneficiary, Leontyne Holloway, has waived her interest in the account in favor of Plaintiff.  Alternatively, if Wood had failed to name a beneficiary, Plaintiff claims ownership of her father's account under the Savings Plan's standard beneficiary designation

---

[77]*See* 29 U.S.C. § 1104(a)(1)(B) (providing that a fiduciary shall take reasonably prudent care in the discharge of his duties); *id.* § 1104(a)(1)(D) (requiring a fiduciary generally to discharge his duties in accordance with plan documents); *id.* § 1132(a)(3) (allowing a plan "beneficiary" to bring a civil action to obtain relief for ERISA violations, including violations of fiduciary duties).

[78]29 U.S.C. § 1132(a)(1).

[79]*See Swearingen v. Honeywell, Inc.*, 189 F. Supp. 2d 1189, 1193-94 (D. Kan. 2002) (denying a motion to dismiss under Fed. R. Civ. P. 12(b)(6) for lack of statutory standing because the plaintiff may have qualified as a beneficiary under the ERISA-regulated plan at issue); *accord Vaughn v. Bay Envtl. Mgmt., Inc.*, 567 F.3d 1021, 1024 (9th Cir. 2008) ("[A] dismissal for lack of statutory standing is properly viewed as a dismissal for failure to state a claim.").

[80]*Denver Health & Hosp. Auth. v. Beverage Distribs. Co. LLC*, 546 Fed. App'x 742, 746 (10th Cir. 2013).

[81]28 U.S.C. § 1002(8).

since she believes Wood died without a spouse.  Had Wood married Defendant Drayton before

he died, on the other hand, any beneficiary designation made before the marriage would be

canceled and the account would transfer to Drayton pursuant to the standard beneficiary

designation.[82]  Plaintiff's ERISA claims therefore depend wholly on whether Wood and Drayton

were validly married when Wood passed away.[83]  The dispositive question on Defendants'

motions to dismiss is whether Plaintiff has stated facts plausibly suggesting that Drayton is not

Wood's surviving spouse.[84]

Because Defendant Drayton applied for and recorded the marriage certificate at issue in

Harris County, Texas, Texas law determines the existence and validity of the marriage.[85]  "Every

marriage entered into in [Texas] is presumed to be valid unless expressly made void by Chapter

6 [of the Texas Family Code] or unless expressly made voidable by Chapter 6 and annulled as

provided by that chapter."[86]  The Texas Family Code makes marriages void where:

> (1) the marriage is between two relatives,
> (2) the marriage is entered into during the existence of a prior marriage,
> (3) a party to the marriage is under the age of sixteen, or
> (4) a party to the marriage is the current or former stepparent of the other party.[87]

---

[82]Doc. 54-1 at 5-6.

[83]As explained in Section III, in addition to evaluating Defendants Exxon's and Garrison's motions to dismiss for failure to state a claim, the Court is also taking "a peek at the merits" of Plaintiff's claims against Defendant Drayton in order to avoid transferring a case that will clearly fail.  Defendant Drayton insists that Plaintiff's intentional tort claims against Drayton necessarily fail if Plaintiff cannot show Drayton was not married to Wood at the time of Wood's death; Drayton therefore adopts the legal arguments of Defendant Exxon in favor of dismissal.

[84]*See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

[85]*See* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 283 (1971); *see also Grabois v. Jones*, 77 F.3d 574, 576 (2d Cir. 1996) (explaining that federal courts ordinarily apply state law to determine who is the rightful beneficiary of an ERISA-regulated benefit plan).

[86]TEX. FAM. CODE ANN. § 1.101.

[87]*Id.* §§ 6.201-6.206.

In addition, a court may annul a Texas marriage on the following grounds:

> (a) one party was under the age of eighteen,
> (b) one party was under the influence of alcohol or narcotics,
> (c) one party is impotent,
> (d) one party used fraud, duress, or force to induce consent to the marriage,
> (e) one party lacked the mental capacity to consent to the marriage,
> (f) one party concealed a divorce within thirty days of the marriage,
> (g) the marriage occurred within seventy-two hours of the issuance of a license.[88]

Before the statutory presumption of validity becomes operative, the parties must knowingly agree to enter into a marriage relationship, as agreement is "essential to a valid ceremony marriage."[89]  Once a ceremonial marriage is established, however, "technical defect[s]" in the procedure by which the marriage is entered into will not invalidate the marriage unless a statute renders the marriage void or voidable.[90]

Defendants construe Plaintiff's complaint to allege three grounds for finding Drayton and Wood were not married: (1) that the interpleader cases to determine the rightful beneficiary of Wood's other employee benefits were resolved in favor of Plaintiff, and that those cases therefore necessarily ruled that the marriage was invalid; (2) that the marriage was invalid because Drayton failed to file the marriage certificate in a timely manner; and (3) that the marriage is voidable and should be annulled because Wood, being debilitated by illness, pain, and various forms of cancer treatment, lacked the mental capacity to consent to the marriage.[91]

---

[88]*Id.* §§ 6.102-6.110.

[89]*Coulter v. Melady*, 489 S.W.2d 156, 158 (Tex. App. 1972); TEX. FAM. CODE ANN. § 2.203.

[90]MONTGOMERY ET AL., TEXAS FAMILY LAW: PRACTICE AND PROCEDURE § B1.04 (Montgomery et al. eds., 2014) (citing *Williams v. White*, 263 S.W.2d 666, 668 (Tex. App. 1953), and *Chapman v. Chapman*, 32 S.W. 564, 565 (Tex. App. 1895)).

[91]Defendants initially believed Plaintiff stated four arguments in support of her claims, including the argument that Drayton's marriage to Wood was invalid because Drayton removed Wood from his home in Texas shortly before he died.  Plaintiff has conceded, however, that Drayton's removal of Wood from his home is not a sufficient basis for invalidating the marriage.  The Court therefore declines to address that point.

Defendants maintain that all of these arguments fail as a matter of law.  But the Court reads Plaintiff's complaint to articulate a fourth ground: that Wood and Drayton were not married because they never participated in a marriage ceremony at all.  The Court will address each contention separately.

     1.     Interpleader Cases

Plaintiff first argues that the interpleader cases to determine the rightful beneficiary of Wood's other employment benefits have already awarded those benefits to Plaintiff, and that the doctrine of collateral estoppel thus compels a ruling in her favor in this case.  Defendants understand this argument to state that, "by entering judgment in [Plaintiff's] favor, [the interpleader cases] ruled that the marriage was invalid."[92]  Defendants contend that issue preclusion is inapposite here, as the interpleader cases were won by default judgment.

The Court finds the doctrine of issue preclusion inapplicable in this case.  "In general, issue preclusion applies when: (1) the issue previously decided is identical with the one presented in the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party, or in privity with a party, to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate in the prior action."[93]  Here, the issues in the interpleader suits do not appear to be identical with the issue in this case because the interpleader actions did not involve the ExxonMobil Savings Plan.  Plaintiff does not allege, and the Court cannot assume, that the marriage validity issue would have been determinative in the earlier cases.  Further, Plaintiff

---

[92]Doc. 54 at 11.

[93]*Park Lake Res. Ltd. Liab. v. U.S. Dep't of Agric.*, 378 F.3d 1132, 1136 (10th Cir. 2004) (quoting *Dodge v. Cotter Corp.*, 203 F.3d 1190, 1198 (10th Cir. 2000)).

prevailed on both interpleader cases by default judgment.[94]  Issue preclusion does not ordinarily apply in default judgment cases since the issues are not actually litigated and are not adjudicated on the merits.[95]  The rationale underlying that rule applies here:  Defendant Drayton did not contest the matters at issue in those actions, and the courts did not determine that the ostensible marriage between Wood and Defendant Drayton was invalid.[96]  The Court concludes that the doctrine of issue preclusion does not defeat Defendants' motions to dismiss.

      2.     Untimely Return of Marriage Certificate

Plaintiff next alleges that Defendant Drayton filed the marriage certificate more than thirty days after the purported ceremony date in violation of statutory requirements.  The Texas Family Code requires a marriage license to be recorded within thirty days of the ceremony.[97]  Defendants counter that failure to return the license in a timely fashion is a "technical defect" and "not one of the reasons to declare a marriage invalid or void."

The Court agrees with Defendants that Drayton's tardiness in filing the certificate is not a sufficient basis for invalidating the marriage.  A court may annul or declare void a ceremonial marriage only if it finds a statutory ground for doing so.[98]  Untimely return of the marriage

---

[94]*See* Docs. 54-3, 54-4.  The Court may take judicial notice of the contents of court files without converting this motion to a motion for summary judgment.  *See Pace v. Swerdlow*, 519 F.3d 1067, 1072 (10th Cir. 2008).  The Court may consider these documents also because Plaintiff refers to the interpleader actions in her complaint, and indisputably authentic copies are attached to Defendant Exxon's Motion to Dismiss.  *Id.*

[95]*See In re Corey*, 583 F.3d 1249, 1251 (10th Cir. 2009) (quoting *Arizona v. California*, 530 U.S. 392, 414 (2000)).

[96]*See* Docs. 54-3, 54-4.

[97]Tex. Fam. Code Ann. § 2.206.

[98]Tex. Fam. Code Ann. § 1.101.

certificate, though punishable by fine,[99] is not one of those grounds.[100]   Accordingly, Texas state

courts have treated deficiencies in the marriage license as mere technical defects incapable of

voiding a marriage.  The Texas Court of Appeals, for example, has acknowledged that "failure to

comply with [marriage license] formalities does not render the marriage invalid unless a statute

declares it so."[101]  Even the complete absence of a marriage license will not nullify an otherwise

valid marriage.[102]  If Wood's supposed marriage to Drayton would not be invalid for want of a

marriage license, it is not invalid simply because Drayton returned the license too late.  The

Court therefore may not annul or declare the marriage void on this basis.

3.       Lack of Capacity

Plaintiff states that, at the time of the purported ceremony, Wood lacked the mental

capacity to consent to the marriage since he was "severely debilitated by infirmity and illness,

radiation therapy, chemotherapy, drug therapy and excruciating pain."[103]  Unlike a marriage

license defect, incapacity to consent is one of the statutory grounds for annulling a marriage

celebrated in Texas.[104]  Defendants respond that Plaintiff does not have standing to seek

annulment of the marriage for lack of capacity and that, in any event, the Court may not annul

the marriage in this collateral proceeding.

The Court again agrees with Defendants.  If Drayton and Wood had participated in a

---

[99]*Id.* § 2.206.

[100]*See id.* §§ 6.102-6.110, 6.201-6.206.

[101]*In re Estate of Loveless*, 64 S.W.3d 564, 576 (Tex. App. 2001) (citing *Williams v. White*, 263 S.W.2d 666, 668 (Tex. Civ. App. 1953)).

[102]*Husband v. Pierce*, 800 S.W.2d 661, 664 (Tex. App. 1990).

[103]Doc. 48 ¶ 12.

[104]TEX. FAM. CODE ANN. § 6.108.

marriage ceremony, Wood's lack of capacity would make the marriage voidable, rather than void.[105]  Plaintiff would thus need to seek annulment of the marriage in order to sue as a beneficiary of her father's Savings Plan account.  As Defendants point out, however, the Texas Family Code allows suits to annul marriages for lack of capacity to be brought only by a "party [to the marriage] or the party's guardian or next friend."[106]  Plaintiff does not allege that she is her deceased father's guardian or next friend, and thus lacks standing to seek annulment of the marriage based on lack of capacity.  A voidable marriage, moreover, may be set aside only in a suit initiated for that purpose; it may not be attacked in a collateral proceeding such as this one.[107]  Consequently, the Court may not declare the marriage invalid based on lack of capacity to consent to the marriage.

4.      Absence of Marriage Ceremony

Plaintiff does not explicitly state that Wood and Drayton never participated in a marriage ceremony; however, construing the facts alleged in the light most favorable to Plaintiff, she sufficiently alleges that no marriage ceremony ever took place.  Plaintiff first alleges that Drayton recorded the marriage certificate only after Wood passed away, even though the pair were supposedly married in a ceremony performed on March 29, 2007—nearly a month and a half earlier.[108]  Plaintiff alleges that the day Drayton recorded the marriage certificate was also the day she called Plaintiff's mother seeking information that would help her obtain Wood's

---

[105]*See* TEX. FAM. CODE ANN. §§ 6.102-6.110, 6.201-6.206.

[106]*Id.* § 6.108.

[107]*Cf. Carter v. Green*, 64 S.W.2d 1069, 1070 (Tex. Civ. App. 1933); *cf.* TEX. FAM. CODE ANN. § 6.307 ("[T]he court may declare the marriage *void* in a collateral proceeding.") (emphasis added).

[108]Doc. 48 ¶ 9.

employee benefits.[109]  And Plaintiff alleges that during that phone conversation, Drayton claimed to have married Wood not in March 2007, but in September 2006.[110]  Plaintiff also points to the recorded marriage certificate as evidence of Drayton's fraud[111]—a claim that makes little sense unless Plaintiff contends that the certificate is false or forged.  Considered with Plaintiff's references to the "*alleged* ceremony"[112] and a marriage certificate "*purport[ing]* to certify that [Drayton and Wood] were married in a ceremony,"[113] the discrepancies in Drayton's narrative and the circumstances under which she recorded the marriage certificate raise the "reasonable inference" that no ceremony took place between Drayton and Wood.[114]

The Court considers the occurrence of a marriage ceremony particularly important in this case, as the absence of a ceremony would raise serious doubt that Wood had ever agreed to enter into a marriage relationship with Drayton.  Though lack of agreement is not one of the grounds enumerated in the Texas Family Code for recognizing a marriage as void or voidable,[115] the statute's structure makes clear that agreement to enter into a marriage is a prerequisite for the presumption of validity to become operative and for the Chapter 6 dissolution restrictions to apply.  Section 1.101 states that the presumption of validity attaches only to "*marriage[s]*

---

[109]*Id.* ¶¶ 9, 13.

[110]*Id.* ¶ 14.

[111]Doc. 75 at 4 ("Defendants claim that the alleged unverified, unsubstantiated marriage certificate is proof that there was a valid marriage between Drayton and Wood.  Plaintiff contends that the alleged marriage certificate is proof of Drayton's fraud."); *see also* Doc. 48 ¶ 32 (stating that Drayton's claim for the Savings Plan account was "fraudulent").

[112]Doc. 48 ¶ 11 (emphasis added).

[113]*Id.* ¶ 9 (emphasis added).

[114]*See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[115]TEX. FAM. CODE ANN. §§ 6.102-6.110, 6.201-6.206 (enumerating the grounds for declaring void or for annulling a marriage entered into in Texas).

*entered into* in [Texas]."[116]  For a Texas-based marriage to be "entered into," it is fundamental

that both parties have agreed to get married.[117]  Thus, two years after the Texas legislature

enacted the Family Code, the Court of Civil Appeals held that "free consent and agreement of

the parties is essential to a valid ceremonial marriage," despite the fact that "[w]ant of consent to

marriage . . . is not listed in the Family Code as a cause that renders a marriage either void or

voidable."[118]  It follows that a court need not presume a valid marriage where, as here, the

alleged facts plausibly show one party's attempt to create a marriage relationship unilaterally by

filing a false marriage certificate.[119]

Defendants urge that "[t]estimony from a spouse to the effect that the parties were

married in a ceremony will usually suffice [to invoke] the presumption of the marriage's

validity."[120]  Without deciding whether this is a "usual" case, the Court notes that Drayton's

affidavit makes no mention of a marriage ceremony.  But Defendant Exxon also submits a

certified copy of the marriage license filed by Drayton.[121]  In *Black v. Shell Oil Co.*,[122] the Texas

Court of Civil Appeals found that where "[t]he marriage license and certificate hav[e] been

---

[116]*Id.* § 1.101 (emphasis added).

[117]*See Mpiliris v. Hellenic Lines, Ltd.*, 323 F. Supp. 865, 880 (S.D. Tex. 1969) ("A marital relationship or marital status is based upon the agreement to marry.").

[118]*Coulter v. Melady*, 489 S.W.2d 156, 158 (Tex. Civ. App. 1972).

[119]*See* Tex. Fam. Code Ann. § 1.101; *cf. Parson v. Parson*, 387 S.W.2d 764, 765 (Tex. Civ. App. 1965) ("[P]resumptions to be indulged were that *from and after the date they participated in a ceremony* purporting to celebrate their marriage to one another . . . they were husband and wife.") (emphasis added); Montgomery et al., Texas Family Law: Practice and Procedure § B1.02 (Montgomery et al. eds., 2013) ("[O]nce it is shown that a *ceremonial marriage was performed* or that the elements of a common-law marriage exist, the marriage is presumed to be valid.") (emphasis added).

[120]Montgomery et al., Texas Family Law: Practice and Procedure § B1.04 (Montgomery et al. eds., 2013) (citing *Texas Employers' Ins. Ass'n v. Elder*, 282 S.W.2d 371, 374 (Tex. 1955)).

[121]Doc. 54-2.

[122]397 S.W.2d 877 (Tex. Civ. App. 1965).

26

placed in evidence, all *reasonable* presumptions will be indulged in favor of the validity of the marriage."[123]  That case involved a marriage license placed into evidence at trial.  However, even assuming the Court may properly consider the license at the motion to dismiss stage, it would not be reasonable for the Court to presume a valid marriage under the factual circumstances alleged.  Plaintiff does not dispute that a license was filed; she alleges that the license was filed to create the appearance of a marriage where no marriage relationship ever existed.  In light of those allegations, a marriage license attached as an exhibit to a motion to dismiss is insufficient to establish the occurrence of a marriage ceremony.  Further, more recent Texas decisions suggest that both a license and a ceremony must be shown for the presumption of validity to attach.[124]  The Court therefore declines to presume a valid marriage where the occurrence of a ceremony is disputed.

Assuming Plaintiff's factual allegations to be true, Plaintiff casts doubt that Wood ever "entered into" a marriage relationship with Drayton.  Under § 1.101 of the Texas Family Code, then, the Court need not presume Drayton and Wood were validly married, and Plaintiff need not prove a statutory ground for declaring a marriage void or voidable in order to show that Wood died without a spouse.[125]  Plaintiff's allegations calling into question the occurrence of a marriage ceremony plausibly suggest that Wood never agreed to enter into a marriage with Drayton.  The Court may thus reasonably infer from the facts alleged that Plaintiff is Wood's rightful beneficiary under the terms of Exxon's Savings Plan.  Accordingly, the Court denies

---

[123]*Id.* at 881 (emphasis added).

[124]*See, e.g.*, *Mpilris v. Hellenic Lines, Ltd.*, 323 F. Supp. 865, 880 (S.D. Tex. 1969) (applying the presumption to "[a] *ceremonial marriage* under proper certificate"); *Simpson v. Simpson*, 380 S.W.2d 855, 858 (Tex. App. 1964) (stating that "a *ceremonial marriage* entered into in accordance with legal forms will raise the presumption, or inference of its legality") (emphasis added).

[125]*See* Tex. FAM. CODE ANN. § 1.101.

Defendants' motions to dismiss for failure to state a claim.  The Court additionally finds that the merits of Plaintiff's claims against Defendant Drayton are not "clearly doomed."[126]

## V.      Issue of Transfer—Exxon and Garrison

Defendants Exxon and Garrison have not moved to dismiss for lack of personal jurisdiction and have not argued that venue is improper in this district.  Even where an action is brought in a proper venue, however, 28 U.S.C. § 1404(a) allows a court to transfer an action to another district "[f]or the convenience of parties and witnesses, [and] in the interest of justice."[127]  In light of the Court's findings that Plaintiff states a claim against Defendants Exxon and Garrison but that the Court lacks personal jurisdiction over Defendant Drayton, transferring the actions may avoid piecemeal litigation and allow the parties more convenient access to evidence and witnesses.[128]  The Court will therefore allow the parties to brief the issue of transfer pursuant to § 1404(a).

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant Drayton's Motion to Dismiss (Doc. 55) for lack of personal jurisdiction shall be **GRANTED**.  However, dismissal of the action against her shall be held in abeyance pending further order of the Court.

**IT IS FURTHER ORDERED BY THE COURT** that Defendant Exxon's Motion to Dismiss the Second Amended Complaint (Doc. 53) for failure to state a claim and Defendant Garrison's Motion to Dismiss the Second Amended Complaint (Doc. 58) for failure to state a claim are **DENIED**.

---

[126]*Hough v. Booker*, 210 F.3d 1147, 1150 (10th Cir. 2000) (authorizing courts to evaluate the merits of an action when considering the consequences of transfer).

[127]*See* 28 U.S.C. § 1404(a).

[128]*See, e.g., Malone v. Commonwealth Edison Co.*, 2 F. Supp. 2d 545, 547-48 (S.D.N.Y. 1998) (transferring both an ERISA claim and a state law claim for breach of contract where "both of plaintiff's claims . . . [we]re intimately related and involve[d] the same events and witnesses," so that both claims "could be heard at once in the same forum").

**IT IS FURTHER ORDERED BY THE COURT** that the parties shall file any motions to transfer and/or briefs regarding whether transfer of this case would be in the interest of justice under 28 U.S.C. §§ 1404, 1406, or 1631 within fourteen (14) days of this order, and any responses shall be filed within seven (7) days thereafter.  Plaintiff's motions and memoranda in support and/or briefs shall be no longer than ten pages.  Defendant Drayton's motions and memoranda in support and/or briefs shall be no longer than ten pages.  Defendant Exxon's and Defendant Garrison's collective motions and memoranda in support and/or briefs shall be no longer than ten pages.  Replies will not be allowed.

Dated: <u>October 16, 2014</u>

         S/ Julie A. Robinson

        JULIE A. ROBINSON

        UNITED STATES DISTRICT JUDGE