IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **ISOKE N. JENKINS-DYER,**<br><br>    **Plaintiff,**<br><br>    v.<br><br>**ANITA L. DRAYTON, et al.,**<br><br>    **Defendants.** | Case No. 2:13-CV-02489-JAR |

## MEMORANDUM AND ORDER

Plaintiff Isoke N. Jenkins-Dyer, proceeding *pro se*, brings this action under the Employee Retirement Income Security Act of 1974 ("ERISA") for benefits to which she claims she is entitled, and for breach of fiduciary duties by Defendants. Plaintiff's Second Amended Complaint (Doc. 48) also named Anita Drayton as a defendant in the case; the Court dismissed Defendant Drayton for lack of personal jurisdiction in a prior Memorandum and Order (Doc. 79). Now before the Court is Defendants' Motion for Summary Judgment (Doc. 85) and Plaintiff's Motion for Partial Summary Judgment (Doc. 99). The motions are fully briefed and the Court is prepared to rule. For the reasons explained below, Defendant's motion for summary judgment is granted and Plaintiff's motion is denied.

### I. Factual and Procedural Background

The factual background of the case is detailed in the Court's previous Memorandum and Order, and the uncontroverted facts are briefly summarized here. They are drawn from the parties' submissions pursuant to D. Kan. R. 56.1(a).[1] Plaintiff is the biological daughter of Connington L. Wood ("Wood"), a former ExxonMobil Corporation ("Exxon") employee who lived and worked in Houston, Texas. Wood died on May 7, 2007. At the time of his death, he

---

[1] Docs. 86, 96, 99, 100.

owned an ExxonMobil Savings Plan ("the Plan" or "Savings Plan") worth about $94,000, which was subject to ERISA regulation. Defendant Douglas F. Garrison was the Plan's administrator. The Plan's terms provided that if the participant died without naming a beneficiary, the account would transfer first to the participant's spouse, and if he did not have a spouse, to his children.[2] The Plan's terms also contain a presumption that a participant's spouse will be the beneficiary of the Plan unless the spouse agrees to a different designation.[3] Neither Plaintiff nor Drayton were named beneficiaries on the account at the time of Wood's death. On May 14, 2007, one week after Wood's death, Drayton recorded a marriage certificate in Harris County, Texas, which certified that Wood and Drayton were married in a ceremony on March 29, 2007. Plaintiff's mother notified Defendants of her daughter's claim for the Plan benefits on May 15, 2007, and informed Exxon and Garrison that she believed Drayton and Wood were not married at the time of Wood's death. Exxon and Garrison transferred ownership of the Plan to Drayton in July 2007. Defendants notified Plaintiff on February 21, 2008 that they had denied her claim.

Exxon brought an interpleader action in the Southern District of Texas in 2008 to ascertain the proper beneficiary of Wood's employee pension and disability plans. Plaintiff and Drayton were both named as defendants in the suit. A previous lawsuit had been filed earlier in 2008 by Life Insurance Company of North America in the District of Kansas, naming Plaintiff and Drayton as defendants, to determine the proper beneficiary of Wood's life insurance policy. Drayton failed to file an answer or defend in both cases, and both were resolved in favor of Plaintiff.

In June 2014, Defendants Exxon and Garrison filed a Motion to Dismiss for failure to state a claim (Doc. 58), and Drayton filed a motion to dismiss for lack of personal jurisdiction

---

[2] Doc. 54-1 at 4-5.

[3] *Id.* at 5.

(Doc. 55). The Court granted Drayton's motion and dismissed her from the case. Defendants Exxon and Garrison's motion was denied.

In deciding Defendants' motions to dismiss, this Court addressed Plaintiff's four allegations that supported her theory that Drayton and Wood were not married, and thus that Drayton was not entitled to Wood's Savings Plan benefits.[4] Those contentions were that (1) the prior interpleader cases to ascertain the proper recipient of Wood's other employee benefits determined that the marriage was invalid since they awarded his other benefits to Plaintiff; (2) the marriage was invalid because Drayton failed to timely file the marriage certificate; (3) Wood lacked the capacity to consent to the marriage because of his illness and cancer treatment; and (4) no marriage ceremony ever took place.[5] The Court assessed each of these allegations, and found that only the allegation that no marriage ceremony took place, if true, could invalidate the marriage, since the presumption of validity would not take effect if the parties never actually entered into a marriage. Thus, the only remaining question to be addressed on summary judgment is whether a marriage ceremony between Wood and Drayton took place, thereby creating a presumptively valid marriage and making Drayton, rather than Plaintiff, the proper beneficiary of Wood's Savings Plan.

## II.     Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates "that there is no genuine dispute as to any material fact" and that it is "entitled to judgment as a matter of law."[6] In applying this standard, the court views the evidence and all reasonable inferences therefrom in

---

[4] Doc. 79 at 20-28.

[5] *Id.* at 20-21.

[6] Fed. R. Civ. P. 56(a).

the light most favorable to the nonmoving party.[7]  "There is no genuine issue of material fact unless the evidence, construed in the light most favorable to the non-moving party, is such that a reasonable jury could return a verdict for the non-moving party."[8]  A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."[9]  An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[10]

The moving party initially must show the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.[11]  In attempting to meet this standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim.[12]

Once the movant has met the initial burden of showing the absence of a genuine issue of material fact, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."[13]  The nonmoving party may not simply rest upon its pleadings to satisfy its burden.[14]  Rather, the nonmoving party must "set forth specific facts that would be

---

[7] *City of Herriman v. Bell*, 590 F.3d 1176, 1181 (10th Cir. 2010).

[8] *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255 (1986)).

[9] *Wright ex rel. Trust Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc.,* 144 F.3d 664, 670 (10th Cir. 1998)).

[10] *Adler,* 144 F.3d at 670 (citing *Anderson,* 477 U.S. at 248).

[11] *Spaulding v. United Transp. Union,* 279 F.3d 901, 904 (10th Cir. 2002) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986)).

[12] *Adams v. Am. Guar. & Liab. Ins. Co.,* 233 F.3d 1242, 1246 (10th Cir. 2000) (citing *Adler,* 144 F.3d at 671); *see also Kannady v. City of Kiowa,* 590 F.3d 1161, 1169 (10th Cir. 2010).

[13] *Anderson,* 477 U.S. at 256; *Celotex,* 477 U.S. at 324; *Spaulding,* 279 F.3d at 904.

[14] *Anderson,* 477 U.S. at 256; *accord Eck v. Parke, Davis & Co.,* 256 F.3d 1013, 1017 (10th Cir. 2001).

admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[15]  Rule 56(c)(4) provides that opposing affidavits must be made on personal knowledge and shall set forth such facts as would be admissible in evidence.[16]  The non-moving party cannot avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation.[17]

Finally, summary judgment is not a "disfavored procedural shortcut;" on the contrary, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[18]  In responding to a motion for summary judgment, "a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial."[19]  When examining the underlying facts of the case, the Court is cognizant that it may not make credibility determinations or weigh the evidence.[20]

The Court is mindful here of Plaintiff's *pro se* status.  A *pro se* litigant's pleadings are to be liberally construed and are held to a less stringent standard than pleadings by represented parties.[21]  However, the Court does not become an advocate for the *pro se* litigant, and "will not construct arguments or theories for the plaintiff in the absence of any discussion of those

---

[15] *Mitchell v. City of Moore*, 218 F.3d 1190, 1197 (10th Cir. 2000) (quoting *Adler,* 144 F.3d at 670–71); *see Kannady,* 590 F.3d at 1169.

[16] *City of Herriman*, 590 F.3d at 1181.

[17] Fed. R. Civ. P. 56(e); *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006).

[18] *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

[19] *Conaway v. Smith,* 853 F.2d 789, 794 (10th Cir. 1988).

[20] *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[21] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

issues."[22]  "Plaintiff's *pro se* status, in and of itself, does not prevent this Court from granting summary judgment."[23]

### III. Plaintiff's Claim for the Savings Plan Benefits

*A. Legal Standard*

Under ERISA, an individual may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."[24]  Where an individual's claim is based on the denial of benefits, courts review the decision to deny benefits *de novo* "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."[25]  "[I]f the plan grants the administrator discretionary authority to determine eligibility for benefits or to construe the plan's terms," the court applies an arbitrary and capricious standard to the administrator's denial of benefits.[26]  Here, Defendants do not object to the application of the *de novo* standard for the purposes of this motion.[27]

Civil actions may only be brought under ERISA by plan "participant[s] or beneficiar[ies]."[28]  Therefore, Plaintiff may only bring her claim under ERISA if she is a beneficiary of Wood's Savings Plan.  A beneficiary is "a person designated by a participant, or

---

[22] *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991).

[23] *Calia v. Werholtz*, 426 F. Supp. 2d 1210, 1214 (D. Kan. 2006) (citing *Northington v. Jackson*, 973 F.2d 1518, 1521 (10th Cir. 1992)).

[24] 29 U.S.C. § 1132(a)(1)(B).

[25] *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).

[26] *Kimber v. Thiokol Corp.*, 196 F.3d 1092, 1097 (10th Cir. 1999).

[27] Doc. 86 at 8.

[28] 29 U.S.C. § 1132(a)(1).

6

by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder."[29]  The question of whether Plaintiff is a beneficiary is therefore determined by Wood's beneficiary designations or by the terms of the Plan.  There is no dispute that Wood had not designated a beneficiary at the time of his death.  The terms of the Plan state that if the Plan participant does not name a beneficiary, the account will be paid according to the standard beneficiary designation, first to a surviving spouse, next to the participant's children, then to parents, siblings, and finally to the participant's estate administrator.[30]  Therefore, according to the terms of the Plan, because Wood did not designate a beneficiary the Plan benefits would be distributed to Plaintiff, Wood's child, only if he did not have a spouse at the time of his death.

Plaintiff's status as beneficiary and her claim to the Plan benefits thus depend entirely on whether Wood was legally married when he died.  That question is governed by Texas state law.[31]  This Court has already determined that the only theory upon which the validity of the marriage between Wood and Drayton may be challenged is if no marriage ceremony took place.[32] If no marriage ceremony took place, Texas' presumption of validity does not take effect and the validity of the marriage may be challenged.[33]  If a marriage ceremony did take place, the marriage is presumed valid under Texas law and Plaintiff may only challenge it if there is some

---

[29] 29 U.S.C. § 1002(8).

[30] Doc. 54-1 at 4-5.

[31] *See* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 283 (1971); *see also Grabois v. Jones*, 77 F.3d 574, 576 (2d Cir. 1996) (explaining that federal courts ordinarily apply state law to determine who is the rightful beneficiary of an ERISA-regulated benefit plan); Doc. 79 at 19.

[32] Doc. 79 at 19.

[33] Texas law acknowledges that an agreement to enter into a marriage relationship is "essential to a valid ceremony marriage;" thus, if there is no such agreement, it follows that there is also no presumption of validity. *Coulter v. Melady*, 489 S.W.2d 156, 158 (Tex. Ct. App. 1972).

statutory ground under Texas law on which the marriage would be void or voidable.[34] The Texas Family Code makes marriages void where: (1) the marriage is between two relatives; (2) the marriage is entered into during the existence of a prior marriage; (3) a party to the marriage is under the age of sixteen; or (4) a party to the marriage is the current or former stepparent of the other party.[35] A marriage may be annulled on the following grounds: (1) one party was under the age of eighteen; (2) one party was under the influence of alcohol or narcotics; (3) one party is impotent; (4) one party used fraud, duress, or force to induce consent to the marriage; (5) one party lacked the mental capacity to consent to the marriage; (6) one party concealed a divorce within thirty days of the marriage; or (7) the marriage occurred within seventy-two hours of the issuance of a license.[36]

Plaintiff's challenges to the marriage between Drayton and Wood do not fall under the statutory grounds enumerated in the Texas Family Code, with the exception of her allegation that Wood lacked the capacity to consent to the marriage. As this Court has already determined, Plaintiff does not have standing to challenge Wood's consent to the marriage because she is not a party to the marriage or the party's guardian or next friend.[37] The marriage may only be challenged by non-enumerated reasons if there is no presumption of validity; in other words, if there was no marriage ceremony at all, and the presumption therefore is not in effect. The Court considers the evidence submitted by the parties as to the question of whether a marriage ceremony took place, which would trigger the presumption of validity and foreclose Plaintiff's

---

[34] TEX. FAM. CODE ANN. § 1.101 ("[E]very marriage entered into in this state is presumed to be valid unless expressly made void by Chapter 6 or unless expressly made voidable by Chapter 6 and annulled as provided by that chapter").

[35] *Id.* §§ 6.201-6.206.

[36] *Id.* §§ 6.102-6.110.

[37] Doc. 79 at 24; TEX. FAM. CODE ANN. § 6.108.

challenges. If a valid ceremonial marriage did exist between Wood and Drayton upon Wood's death, Drayton is the proper beneficiary of the Savings Plan under the Plan's terms.

   *B. Discussion*

Defendants contend that Drayton was the proper beneficiary of Wood's Savings Plan because she was legally married to Wood at the time of his death. In support of that contention, they have submitted the declarations of Anita Drayton Wood[38] and William A. Lawson.[39] In her declaration, Anita Drayton Wood (referred to in this Memorandum and Order as Drayton, for the sake of consistency with the Court's previous Order) declares under penalty of perjury that she married Wood in a ceremony on March 29, 2007, and that she filed the marriage license with the county clerk on May 14, 2007.[40] She further declares that the ceremony was officiated by Pastor Emeritus William A. Lawson at Wheeler Avenue Baptist Church.[41]

Lawson's declaration, sworn under penalty of perjury, states that on March 29, 2007, he was a licensed or ordained Christian minister and was the Pastor Emeritus of Wheeler Avenue Baptist Church.[42] He further states that he performed the marriage ceremony between Connington Wood and Anita Drayton on March 29, 2007, at Wheeler Avenue Baptist Church, and that his signature appears on the second page of the marriage license.[43] Defendants also provide a certified copy of the marriage certificate, which bears the date of the ceremony, March

---

[38] Doc. 87-1.

[39] Doc. 86-15.

[40] Doc. 87-1 ¶¶ 2-3.

[41] *Id.* ¶ 2.

[42] Doc. 86-15 ¶ 2.

[43] *Id.* ¶¶ 3-4.

9

29, 2007, as well as the name, title, and signature of William A. Lawson, and the clerk's seal bearing the date of May 14, 2007.[44]

Plaintiff objects to the declarations and disputes their contents, arguing that they are self-serving and "have little or no value as evidence and submitted [sic] for the sole purpose of supporting or justifying prior, inconsistent actions."[45] She further argues that "[t]he declarations provide no facts or details upon which to determine (a) whether the statement would be admissible or (b) whether the declarant is competent to testify on that subject."[46] Plaintiff is also skeptical of the lack of mention of Wood's medical condition in the declarations, stating, "[a]ny person who claims to have married a person in Woods' [sic] condition (or to have performed that ceremony) but states nothing else is being less than candid in making such a declaration, and their declaration is not to be believed."[47] Plaintiff thus asks the Court to infer that the declarations of Drayton and Lawson "lack candor and that Wood lacked the ability to consent to any such marriage."[48]

Plaintiff's objections to the declarations, and her opposition to summary judgment, rest on her disbelief that Wood could have participated in a marriage ceremony on March 29, 2007, given his health problems and the medications he was taking. Despite her skepticism about the candor of the declarations and Wood's ability to participate in a marriage ceremony, Plaintiff provides no evidence that would refute those sworn statements. She fails to point out any specific deficiencies aside from their lack of mention of Wood's medical condition, nor does she

---

[44] Doc. 86-5.

[45] Doc. 96 at 3.

[46] *Id.* at 4.

[47] *Id.* at 27.

[48] *Id.*

10

present any evidence that would challenge their contents. Wood's health is not integral to the question of whether a marriage ceremony took place on March 29, 2007, which is the question before this Court. The declarations are properly submitted and properly considered by the Court as evidence, since Lawson and Drayton were present for the event at issue—the marriage ceremony—and have personal knowledge on which the statements are made.[49] Plaintiff's opinion that they are unbelievable is not enough to challenge their veracity or value for the purpose of these summary judgment motions, since the Court does not weigh credibility on summary judgment.

Plaintiff submits five types of documents as evidence to defeat Defendants' Motion for Summary Judgment. She submits documentation that appears to be Wood's medical records,[50] a court document detailing the child support payments that were withdrawn from Wood's paycheck,[51] a Last Will and Testament allegedly signed by Connington Wood,[52] obituaries commemorating Wood's death,[53] and the application for a marriage license by Wood and Drayton.[54]

None of Plaintiff's submissions refute the assertion by Defendants, presented in sworn testimony by Drayton and Lawson, that a marriage ceremony took place. The fact that Wood's health was declining around the time of the marriage ceremony does not create a genuine issue of fact as to whether the ceremony took place. The fact that Wood was required to pay child

---

[49] *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005) ("[A]t the summary judgment stage, the affidavit is proper because its content—the eyewitness account of the affiant—is admissible.")

[50] Docs. 96-6, 96-7.

[51] Doc. 96-1.

[52] Doc. 96-2.

[53] Docs. 96-3, 96-4.

[54] Doc. 96-5.

support to Plaintiff does not at all address or challenge the assertion that a ceremony took place. The obituaries submitted by Plaintiff likewise fail to challenge the existence of a marriage ceremony; in fact, they name Drayton as Wood's surviving spouse.

Plaintiff submits the Last Will and Testament and the application for a marriage license to show that the signatures on the documents differ; she implies that this difference shows that the signature on the marriage license application is not really Wood's. She further implies that the discrepancy casts doubt on Lawson's declaration, because he previously attested to the veracity of the signature on the will.[55] Plaintiff's argument fails to controvert Lawson's sworn statement. The signatures on the documents have no probative value in this case or with regard to Lawson's declaration. The Last Will and Testament was signed in December of 2006; the marriage license application was filled out on March 2, 2007.[56] There is nothing in the application to suggest that Lawson was present for its signing or had anything to do with it at all. The application for the marriage license only mentions that Lawson is to perform the marriage ceremony, but he did not sign the application nor does it state that he was present for its completion. These documents are offered for a merely speculative purpose and have no probative value to the question before this Court. Plaintiff attempts to discredit Lawson and manufacture some issue of fact that does not exist. Lawson states under penalty of perjury that he performed the marriage ceremony between Wood and Drayton on March 29, 2007, and Plaintiff produces nothing more than speculation to refute that sworn statement.

In Plaintiff's motion for summary judgment, she raises three points in addition to those in her opposition to Defendants' present and previous motions. First, she states that Lawson was

---

[55] Doc. 96 at 7.

[56] Docs. 96-2, 96-5.

retired and therefore unable to perform wedding ceremonies as a licensed minister.[57]  Second, she states that the marriage could not be consummated due to Wood's poor health.[58]  Finally, Plaintiff argues that Exxon and Garrison are "acting as advocates of Drayton by mounting a defense of Drayton and attempting to prove that she is Wood's beneficiary after three separate cases have determined otherwise."[59]  Plaintiff submits no evidence to support these assertions, nor does she submit any legal basis for them.  She instead asks the Court to grant summary judgment in her favor on the basis of these contentions and those that were raised and ruled on previously.  Plaintiff fails to meet her burden for summary judgment without any legal or factual basis for her claims.

The Court has already determined that issue preclusion does not apply here.[60]  It is irrelevant to this case whether Plaintiff was determined to be Wood's beneficiary for other employee benefits; it is especially irrelevant since those determinations were made as a result of Drayton's default in the interpleader actions.  No determination was made about the validity of the marriage between Wood and Drayton that would bind this Court.  In this case, regarding Wood's Savings Plan benefits, the only question that has any bearing on the determination of the proper beneficiary is whether Wood was married at the time of his death.  The evidence that Defendants have submitted in this case, which Plaintiff has not refuted except with her own conjecture and suspicion, demonstrates that Wood was indeed married to Drayton when he died.

---

[57] Doc. 99 at 4.

[58] *Id.* at 4, 7.

[59] *Id.* at 20.

[60] Doc. 79 at 21-22.

13

That is so because the evidence proves that a marriage ceremony took place on March 29, 2007, and because Texas law presumes that marriages are valid.[61]

Plaintiff offers no evidence to support her claim that Wood could not consummate his marriage with Drayton. Even if that claim were true, however, Texas law makes no mention of a requirement that a marriage be consummated in order to be valid.[62] Even if Plaintiff's contention is construed as a claim that Wood was impotent, and thus presents a ground for annulment under Chapter 6 of the Texas Family Code, Plaintiff does not have standing to annul the marriage because she is not a party to the marriage nor a party's next friend or guardian.[63]

Plaintiff also fails to present any support for her contention that Lawson was not able to perform marriage ceremonies because he was retired. Although Lawson acknowledges that his title is Pastor Emeritus for Wheeler Avenue Baptist Church, he states under penalty of perjury that he was a licensed or ordained Christian minister.[64] Plaintiff's claim that he could not perform marriage ceremonies, without any legal or factual support, is not sufficient to controvert on his statement or on the validity of the marriage. Furthermore, under Texas law, a marriage is valid even if it is performed by an unauthorized person, as long as "there was a reasonable appearance of authority by that person" and one of the parties to the marriage treats it as valid.[65] Even if Lawson did not have the authority to perform a marriage on March 29, 2007, therefore, the marriage is valid because as a minister he had the reasonable appearance of authority, and

---

[61] TEX. FAM. CODE ANN. § 1.101.

[62] *Id.* ("[E]very marriage entered into in this state is presumed valid unless expressly made void by Chapter 6 or unless expressly made voidable by Chapter 6 and annulled as provided by that chapter").

[63] *Id.* § 6.108.

[64] Doc. 86-15 ¶ 2.

[65] TEX. FAM. CODE ANN. § 2.302.

14

Drayton clearly treated the marriage as valid by filing the marriage license with the county clerk and holding herself out as Wood's wife.

Plaintiff's skepticism about Wood's health or the likelihood that he could have entered into a marriage given his medical condition is not sufficient to create a genuine issue of material fact as to whether a marriage ceremony took place. The sworn statements of Drayton and Lawson that a marriage ceremony did take place are not refuted by any of the evidence Plaintiff has submitted, and therefore no genuine issue of material fact exists. As this Court has already recognized, the fact that a marriage ceremony took place renders the marriage between Drayton and Wood valid under Texas law without some statutory showing under Chapter 6 that it is void or voidable.[66] Plaintiff fails to present such a statutory showing.

The terms of the Savings Plan undisputedly state that the participant's spouse is the rightful beneficiary of the Plan; the participant's child is a beneficiary only if the participant does not have a spouse.[67] Drayton, as Wood's spouse, is therefore the beneficiary of Wood's Savings Plan, not Plaintiff.

## IV. Plaintiff's Claim for Defendants' Breach of Fiduciary Duty

Plaintiff claims that Defendants breached their fiduciary duty in numerous ways in their handling of her claim for the Plan benefits.[68] Specifically, she claims that they breached their duty by (1) paying someone other than herself; (2) failing to use prudence and investigate competing claims reasonably; (3) failing to disclose necessary and required information to Plaintiff; (4) filing multiple interpleader lawsuits rather than depositing funds into the Court's

---

[66] *Id.* § 1.101; Doc. 79 at 20.

[67] Doc. 54-1 at 4-5.

[68] Doc. 99 at 24.

registry and filing a single interpleader suit; (5) failing to pay Plaintiff all benefits due after she prevailed in the interpleader cases; (6) acting as Drayton's advocate in this case; (7) refusing to provide Plaintiff with information about Wood's benefits and beneficiaries; (8) failing to disclose its decision on Plaintiff's appeal or explain its reasons for its decision; and (9) relying on information provided over the telephone by the Harris County clerk's office.

Section 1132(a)(3) of the ERISA statute states that a civil action may be brought "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violation or (ii) to enforce any provision of this subchapter."[69] The relief available under that section is limited, however.[70] "[W]e should expect that where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate.'"[71] Here, "[b]ecause the plaintiff has a remedy under § 1132(a)(1)(B) to recover any benefits due her as a plan beneficiary, equitable relief under § 1132(a)(3) is no longer 'appropriate.'"[72] "That the plaintiff 'did not prevail on her § 1132(a)(1)(B) claim does not make her alternative claim under § 1132(a)(3) viable.'"[73] The Court need not address each of Plaintiff's contentions individually; because she has a potential remedy to recover the benefits to which she claims entitlement, she may not recover in equity for breach of fiduciary duty.

---

[69] 29 U.S.C. § 1132(a)(3).

[70] *Arocho v. Goodyear Tire & Rubber Co.*, 88 F. Supp. 2d 1175, 1185 (D. Kan. 2000).

[71] *Id.* at 1185 (quoting *Varity Corp. v. Howe*, 516 U.S. 489, 515 (1996)).

[72] *Id.* (citing cases).

[73] *Id.* (alteration omitted) (quoting *Tolson Avondale Indus., Inc.*, 141 F.3d 604, 610 (5th Cir. 1998)).

Even if § 1132(a)(3) did provide for some remedy under these circumstances, Defendants would still be entitled to summary judgment on Plaintiff's claim for breach of fiduciary duty. Defendants enforced the plan according to its terms by awarding the benefits to Drayton, Wood's spouse.[74] Plaintiff's objection to that decision does not amount to a viable claim for breach of fiduciary duty by Defendants. Furthermore, even if Defendants acted improperly by failing to timely provide Plaintiff with information she requested, including the decision on her appeal, Plaintiff may not recover because she was not a beneficiary to the Plan and was not entitled to the Plan benefits.

**IT IS THEREFORE ORDERED** that Defendants' Motion for Summary Judgment (Doc. 86) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. 99) is **DENIED**.

**IT IS SO ORDERED.**

Dated: September 25, 2015

                                                  S/ Julie A. Robinson
                                                 JULIE A. ROBINSON
                                                 UNITED STATES DISTRICT JUDGE

---

[74] *See id* at 1186. ("Goodyear fulfilled its fiduciary obligation of discharging its duties 'in accordance with the documents and instruments governing the plan.'"); *see also Averhart v. U.S. WEST Management Pension Plan*, 46 F.3d 1480, 1489 n.6 (10th Cir. 1994) ("as a matter of law, benefits committee did not breach fiduciary duties by denying benefits to employees who were not entitled to such benefits under the terms of the plan").